Filed 12/5/14  Rommel v. Los Angeles Unified School Dist. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| GLORIA ROMMEL, | B253405 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC501764) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Reversed and remanded.

Duchrow & Piano, David J. Duchrow and Jill A. Piano, for Plaintiff and Appellant.

Los Angeles Unified School District Office of General Counsel, Charlie L. Hill, and Alexander Molina for Defendant and Respondent.

_____

Gloria Rommel appeals from a judgment of dismissal after the court sustained the demurrer of respondent Los Angeles Unified School District without leave to amend. Appellant, a certificated school teacher, was allegedly terminated due to a computer error that showed she was absent without leave (AWOL) while on an approved leave of absence. We conclude that the one-year statute of limitations for filing a complaint with the Department of Fair Employment and Housing (DFEH) was equitably tolled while appellant attempted to have her employment status corrected. We also conclude appellant has stated valid claims for disability discrimination, failure to accommodate, and failure to engage in the interactive process under the Fair Employment and Housing Act (Gov. Code, §12940 et seq., FEHA).[1] The judgment (order of dismissal) is reversed.

## FACTUAL AND PROCEDURAL SUMMARY

The factual summary is taken from the first amended complaint, the operative pleading. Appellant was a certificated employee, who became disabled during her employment with respondent. Respondent approved her leave of absence between June 1, 2007 and June 30, 2008. Appellant was notified her 2008 application for leave of absence was "incomplete." The leave of absence was at some point approved.

In May 2009, appellant received notices that "she was on an 'unauthorized' leave" and that she was AWOL. She was given 10 days to respond and was advised that her failure to do so '"may result in an action to process your separation from the District.'" She contacted the head secretary at the school to which she had been assigned. The secretary assured her the principal had not reported her absent, and her AWOL status was due to a computer error. Appellant then contacted James Brumitt, a specialist in the Certificated Placement and Assignments Unit, who directed her to submit applications for a leave of absence from July 2008 through July 2009, and from July 2009 through July 2010. Appellant complied.

---

[1] Unless otherwise indicated, statutory references are to the Government Code.

2

Appellant learned that respondent's conversion of its payroll system in 2008 generated computer errors that resulted in her being overpaid $100,000, which she returned. The same systemic error that caused the overpayment resulted in her being "carried on 'authorized' leave status while simultaneously showing she was on 'unauthorized' leave, and causing her eventual termination for being AWOL." Appellant was "only aware, from documents she received from [respondent], that she was on authorized leave of absence, being ignorant of the AWOL processing based on an assumption that she had exhausted her paid leave . . . ."

In March 2010, appellant called the health benefits office of the State Teachers Retirement System and learned that her retirement benefits, including medical insurance, were affected by her "'failure to report'" status. She again contacted Mr. Brumitt, who promised to have someone "'research' the problem." In May 2010, Mr. Brumitt told appellant that she was not entitled to medical benefits because her status with respondent was "'severed.'" Appellant retained counsel and filed a worker's compensation claim. After Mr. Brumitt failed to follow through with his promise to set up a conference call with his supervisor, appellant wrote to his supervisor directly, claiming that "she had been erroneously classified as 'failure to report' . . . despite documentation she had to the contrary, specifically her LAUSD approvals for leaves of absence . . . ."

Appellant sought reinstatement, but respondent maintained she was justifiably terminated due to her AWOL status, and her pending worker's compensation case created uncertainty about her condition, need for treatment and work restrictions, which also affected respondent's willingness to reinstate her. Appellant was directed to respondent's chief of Human Resources, who in turn directed her to John Bladder in the same department.

In September 2011, appellant's counsel met with Mr. Bladder. Appellant alleges Mr. Bladder "confirmed that there was a computer error affecting [appellant's] employment status." He did not know how to reinstate her, but he promised to find out. In November 2011, Mr. Bladder notified appellant's counsel that appellant's employment

situation was being investigated. Her attorney was later informed that respondent's deputy superintendent and director of human resources were meeting in January 2012 to determine her employment status. Later that month, counsel was informed that appellant would not be reinstated. In February 2012, appellant was notified in writing that her request for retiree health benefits was denied. In May 2012, she received a worker's compensation award. In June 2012, appellant filed a disability discrimination claim with the DFEH and received a right to sue letter.

On February 26, 2013, appellant sued respondent for disability discrimination, failure to accommodate and failure to engage in the interactive process. After respondent demurred, appellant filed a first amended complaint. Respondent demurred again, and the trial court sustained the demurrer without leave to amend. A judgment of dismissal followed the filing of this appeal.

## DISCUSSION

We deem appellant's premature appeal from the nonappealable order sustaining a demurrer without leave to amend to be an appeal from the subsequent order of dismissal. (*Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1353, fn. 5.) When the trial court sustains a demurrer, we review the complaint independently to determine whether it states a valid cause of action, accepting all factual allegations as true. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We construe the allegations liberally and draw all reasonable inferences in their favor. (*Coleman v. Medtronic, Inc.* (2014) 223 Cal.App.4th 413, 422.) A demurrer is not the appropriate procedural vehicle "for determining the truth of disputed facts or what inferences should be drawn where competing inferences are possible." [Citation.] (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 635.)

I

Respondent demurred to the first amended complaint on the ground that it was barred by the one-year statute of limitations for filing an administrative complaint with

4

DFEH. Compliance with that statute of limitation is a prerequisite to a civil action for damages under FEHA. The statute of limitation runs "from the date upon which the alleged unlawful practice or refusal to cooperate occurred, . . ." (§12960, subd. (d); *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 63.)

The parties disagree about the date that triggered the running of this limitations period. Respondent maintains it began in 2010, when appellant learned that her relationship with respondent had been severed. Appellant contends that it began in 2012 when she learned respondent had refused to reinstate her and was denied benefits in writing. On appeal, she adds that the statute of limitations could not have started to run in 2010 because she was never terminated pursuant to Education Code, section 44930 et seq., which provides for a notice of intent to dismiss a permanent employee and an opportunity for a hearing.

Respondent argues that appellant is precluded from raising the violation of the Education Code as a new legal theory on appeal. A new legal theory may be raised on appeal after a demurrer is sustained without leave to amend. (See *20th Century Ins. Co. v. Quackenbush* (1998) 64 Cal.App.4th 135, 139, fn. 3.) Appellant has requested leave to amend the complaint not to allege the violation of the Education Code as a new theory of liability, but only as necessary to cure any timeliness defect. Such an amendment is unnecessary because even were the statute of limitations triggered as early as 2010, it was equitably tolled while appellant attempted to resolve her status with respondent.

The judicially created doctrine of equitable tolling requires "'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' [Citations.]" (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 102 (*McDonald*).) The purpose of the statute of limitations—to protect defendants "from stale claims and deteriorated evidence"—is satisfied if during the statutory period the defendant is alerted to "the need to begin investigating the facts which form the basis for" the plaintiff's claim that is subject to the statute of limitations, and is afforded "an opportunity to identify the sources of evidence which might be

5

needed to defend against" that claim. (*Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 924–925 (*Collier*).) To show good faith, the plaintiff must not additionally delay the filing of a claim "until the statute on that claim had nearly run, even after crediting the tolled period." (*Id.* at p. 926.)

Respondent argues appellant did not pursue an internal remedy despite the allegations that she attempted to have her employment status resolved by contacting various individuals within its employ. But respondent identifies no other internal remedy that was available to appellant at the time she allegedly learned of her termination, and in any event, exhaustion of internal administrative remedies is not a prerequisite for filing a FEHA claim. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1092.) That appellant was not required to seek initial redress from respondent under FEHA does not prevent the application of equitable estoppel in her case since the doctrine applies "equally to the voluntary pursuit of alternate remedies." (*McDonald*, *supra*, 45 Cal.4th at p. 102.) Liberally construed in appellant's favor, the first amended complaint sufficiently alleges that, through January 2012, appellant actively sought to obtain redress from respondent without resorting to legal action. She was led to believe her employment status was being investigated and her termination was the result of a computer error. Her actions were consistent with the preference for informal resolution and reduction of "unnecessary, premature litigation" under FEHA, which informs the application of the doctrines of equitable tolling and continuing violation in such cases. (*Id.* at p. 108.)

Respondent also argues it was not alerted to the facts that form the basis of appellant's disability discrimination claim under FEHA. We disagree. A defendant is not prejudiced if during the statutory period it receives notice of a claim sufficiently similar, even if not identical, to the one advanced in the subsequent action and is able to investigate and gather evidence to "fairly defend" itself in that action. (*McDonald*, *supra*, 45 Cal.4th at p. 102, fn. 2.) Appellant relies on *Collier*, *supra*, 142 Cal.App.3d 917, 929, which held that the filing of a worker's compensation claim equitably tolled the time for filing a disability retirement claim because the evidence relevant to both claims was

6

"nearly identical." Respondent does not challenge appellant's claim that her disability leave applications and worker's compensation case gave notice of the nature and extent of her claimed disability and the fact that she sought accommodation through disability leaves of absence. But respondent maintains the disability leave applications and worker's compensation claim could not have alerted it to appellant's additional claims that she suffered an adverse employment action due to her disability.

Had appellant alleged nothing more, respondent would be correct. But appellant also alleges she advised respondent that her AWOL status was incorrect because her leaves of absence were approved, that she could not have been terminated, and that she should be reinstated. Her FEHA action is based on the same allegations: that she was terminated due to a computer error which incorrectly classified her as AWOL when she was on approved disability leaves of absence. Respondent was, thus, sufficiently alerted to appellant's claim that an unjustified adverse action had been taken against her while she was on approved disability leaves of absence. Appellant's requests for correction of her employment status and reinstatement were allegedly investigated by respondent's administrators through early 2012, and appellant filed her DFEH complaint later that year. It is reasonable to infer that during its investigation respondent gathered evidence pertaining to the merits of, and any defenses to, appellant's claims that she was disabled, that she was entitled to leaves of absence as reasonable accommodations of her disability, and that she was improperly terminated.

Because the allegations of the operative pleading are sufficient to invoke the doctrine of equitable tolling, appellant's FEHA claims were not barred, and the demurrer should not have been sustained on that ground.

II

Respondent's demurrer also alleged that appellant failed to state valid causes of action for disability discrimination, failure to accommodate, and failure to engage in the interactive process. To state a claim for disability discrimination, appellant was required to allege that she suffers from a disability, is otherwise qualified to do her job, and was

7

subjected to an adverse employment action because of her disability. (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44.) A failure to accommodate claim requires allegations that respondent failed to reasonably accommodate the disability of a qualified employee. (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 766.) To state a claim for failure to engage in the interactive process, appellant was required to identify "a reasonable accommodation that would have been available at the time the interactive process should have occurred." (*Scotch v. Art Institute of California, Inc.* (2009) 173 Cal.App.4th 986, 1018.)

Respondent argues appellant has not alleged that she was qualified to do her job or that she was subjected to an adverse employment action because she sought to extend her leave of absence at a time when her benefits were exhausted and she had been terminated. Respondent also argues that being on a leave of absence is inconsistent with appellant's allegation that she continued to seek employment. But a "finite" leave of absence may be a reasonable disability accommodation if it appears the employee will be able to return to work in the near future. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263.) Thus, the allegation that appellant continued to seek employment by seeking a leave of absence through 2010 is not illogical; rather, it supports the inference that appellant would have been qualified for her job with that accommodation. The allegations that she was terminated while on an authorized leave of absence and that respondent ultimately refused to reinstate her support the inference that appellant is out of work because of her disability. It also is reasonable to infer that by refusing to honor appellant's authorized leaves of absence, respondent failed to engage in the interactive process in good faith and failed to actually accommodate appellant.

Contrary to respondent's suggestion, appellant has not alleged that she attempted to extend her leave of absence after exhausting her benefits. She alleges that her AWOL status was based on "an assumption that she has exhausted her paid leave," but she also alleges that the AWOL status was the result of a computer error. For purposes of the

8

demurrer, we take the allegation of a computer error to be true. Respondent may challenge it through other procedural means on remand.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter an order overruling respondent's demurrer. Appellant is to recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

9