Filed 1/28/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JAY BROME,<br><br>        Plaintiff and Appellant,<br>v.<br><br>CALIFORNIA HIGHWAY PATROL,<br><br>        Defendant and Respondent. | A154612<br><br>(Solano County<br>Super. Ct. No. FCS047706) |

Jay Brome sued the California Highway Patrol (the Patrol) asserting that, during his career as a law enforcement officer, he suffered harassment and discrimination because of his sexual orientation in violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.).[1]  The trial court granted summary judgment to the Patrol, holding that Brome's claims were filed after the statute of limitations expired and a reasonable jury could not have concluded they were timely based on an exception to the deadline.  The court also rejected Brome's claim that he was constructively discharged.  Brome now appeals the grant of summary judgment.  We hold that the record does not preclude, as a matter of law, a conclusion that his claims were timely and that he was constructively discharged.  Accordingly, we reverse.

**BACKGROUND**

**A.**

Brome began his employment at the Patrol in 1996.  During his nearly 20-year career, other officers subjected Brome, who was openly gay, to derogatory, homophobic

---

[1] Undesignated statutory references are to the Government Code unless otherwise specified.

1

comments; singled him out for pranks; repeatedly defaced his mailbox; and refused to provide him with backup assistance during enforcement stops in the field.

Brome started in the Patrol's San Francisco office before transferring to the Contra Costa office in 2002. While he worked at those offices, he filed administrative complaints about the unlawful harassment and discrimination he suffered, including a discrimination complaint with the Department of Fair Employment and Housing (the Department) in 2003. The Department ruled that the evidence was insufficient, dismissed Brome's complaints, and issued a right to sue letter. Brome did not file a lawsuit then, hoping the Patrol would take his complaints seriously and remedy the situation.

Seeking a better work environment, Brome ultimately transferred to the Patrol's Solano County office in 2008. At that office, his fellow officers presumed he was gay. Homophobic "locker room" talk using words like "gay or fag" "was ongoing" and "very common" amongst the officers there. Officers "would use gay in a negative connotation," saying things like "[o]h, I hated that movie, it was so gay," or "[q]uit looking at me, [f]aggot." An officer made up a poem about Brome's sexual orientation. In another incident, officers used the word "faggots" to describe the potential victims of a hate crime that a recently arrested individual had planned to commit against homosexuals. This type of locker room talk "lessened" over time at the Solano office because officers "didn't want to say things around [Brome]."

Officers at the Solano office frequently refused to provide Brome with backup assistance during enforcement stops, which led him to fear for his life. Brome was "the only one who did not receive backup on a daily basis," and "every time [he] went to work within [his] 12-hour day this would typically happen." These denials of assistance happened so often that it was "impossible to list them all." Brome was left to handle high-risk situations that generally should be handled by at least two officers, such as high-speed vehicle pursuits, impounding vehicles, or hit-and-run accidents, on his own. When asked if "it would be appropriate for at least two officers to respond" to situations similar to those in which Brome was denied backup, his captain testified, "[a]t a minimum." An officer without backup assistance would be in a "very precarious"

situation. Some officers who refused to back Brome up were known to be homophobic or had cut off contact with other officers known to be gay. Brome's captain testified that "not responding to other officers' calls is a serious allegation" and "[i]t is a . . . corrosive thing to have officers not responding to other officers' calls because of some perceived bias."

When Brome won the Solano Area Officer of the Year Award in October 2013, the Patrol never displayed his photograph, in a break from office practice. A photograph of the previous year's winner remained displayed throughout 2014.

Through 2014, Brome complained to his superiors at the Solano office, raising concerns including the denials of backup assistance as well as the failure to display his Officer of the Year photo. His superiors understood Brome believed he was treated differently based on his sexual orientation. His supervisors told him "they would look into [the issues] and take care of it." His captain testified that they did look into the denials of backup assistance, determined that at least one officer had acted inappropriately, and disciplined that officer. However, the problems continued and Brome believed that "management refused to do anything about it."

As a result, Brome feared for his life during enforcement stops, experienced headaches, muscle pain, stomach issues, anxiety and stress, and became suicidal by early 2015. In January 2015, he went on medical leave and filed a workers' compensation claim based on work-related stress. When a sergeant texted him about his compensation claim, Brome said he preferred that the Solano office not contact him and explained: "I have been in counseling my entire career due to the harassment and hostile work environment at the [Patrol]."

Shortly after Brome took leave, his captain sent him a letter expressing concern regarding his allegations of harassment and a hostile work environment. His captain stated that the Patrol "remain[s] committed to provide a safe and healthy work environment that is free of discrimination and harassment for all employees and want[s] to work with you to that end." He wrote: "I genuinely hope you allow us the opportunity to work together to resolve your work-related issues." The captain understood that

3

Brome was alleging workplace harassment and that he had not only a workers' compensation claim but also a potential discrimination complaint.

Brome's workers' compensation claim was resolved in his favor on October 27, 2015. He took industrial disability retirement on February 29, 2016, ending his employment with the Patrol.

## B.

On September 15, 2016, Brome filed an administrative complaint with the Department of Fair Employment and Housing. He filed a lawsuit the next day, asserting four claims under the Fair Employment and Housing Act (the Act): discrimination based on sexual orientation (§ 12940, subd. (a)); harassment based on sexual orientation (§ 12940, subd. (j)); failure to prevent harassment (§ 12940, subd. (k)); and retaliation (§ 12940, subd. (h)). He also asserted a claim for intentional infliction of emotional distress that is not at issue in this appeal.

The Patrol sought summary judgment, contending Brome's claims were untimely because he did not file his administrative complaint within one year of the challenged actions, as required under former section 12960, subdivision (d).[2] Given the date of Brome's administrative complaint, he would ordinarily be able to sue based on acts occurring during the one-year period immediately prior, or on or after September 15, 2015. However, because the crux of his case concerns circumstances that occurred before his medical leave began in January 2015, he asserted that exceptions to the one-year deadline were applicable.

---

[2] On January 1, 2020, an amendment to section 12960 took effect that enlarges the time for filing a Department claim to three years from the date of the challenged conduct. (See 12960, subd. (e).) The amended statute does not affect our resolution of the issues Brome raises on appeal, which concern whether as a matter of law, his claims were untimely under the one-year deadline in former section 12960, subdivision (d). We express no opinion on the effect of the amended statute should a jury determine, on remand, that Brome's claims are timely under former section 12960, subdivision (d). (See *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 640-641.)

4

Brome relied on a doctrine known as equitable tolling, which allows the suspension or extension of a limitations period under certain circumstances. (See *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99-100 (*McDonald*).) He argued that the filing of his workers' compensation claim should stop the clock on his one-year filing deadline during the pendency of his compensation claim. Brome also relied on the continuing violation doctrine, under which an employer may be liable for acts occurring before the limitations period if they are sufficiently linked to unlawful conduct that occurred within the period. (See *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802 (*Richards*).) In addition, he asserted that his complaint was timely based on a constructive discharge theory because his working conditions were so intolerable that they effectively forced him to take disability retirement in February 2016. (See *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1246-51 (*Turner*).)

The trial court assumed the deadline could be tolled during the 285 days Brome's compensation claim was pending, which allowed him to rely on acts occurring on or after December 5, 2014. However, the court rejected Brome's continuing violation argument, concluding he failed to present evidence of actionable conduct within the limitations period. The court rejected Brome's constructive discharge argument on the merits, holding that he failed to establish intolerable working conditions.[3]

## DISCUSSION

### A.

We construe the facts in the light most favorable to Brome, the losing party on summary judgment. (*McDonald*, *supra*, 45 Cal.4th at pp. 96-97.) The existence of a triable issue of fact is a legal question that we review de novo. (*Limited Stores, Inc. v.*

---

[3] Brome requests that we take judicial notice of a letter sent to his attorney by the Patrol's counsel shortly after the trial court issued its decision. The letter discloses that the Patrol belatedly discovered evidence from 1998 and 2001. Because the letter has little relevance to a material issue in this appeal, we deny the request. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135 fn. 1.)

*Franchise Tax Bd.* (2007) 152 Cal.App.4th 1491, 1495-1496; see also *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).

**B.**

Brome asserts that the filing of his workers' compensation claim could equitably toll the one-year deadline for filing his discrimination claim with the Department of Fair Employment and Housing. We agree.

The equitable tolling doctrine operates to " 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' " (*McDonald*, *supra*, 45 Cal.4th at p. 99, quoting *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370 (*Lantzy*).) Equitable tolling reflects " 'a general policy which favors relieving [a] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one.'" (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657, quoting *Addison v. State of California* (1978) 21 Cal.3d 313, 317 (*Addison*).) The doctrine encourages the resolution of meritorious claims while avoiding unnecessary litigation and alleviating the burden of pursuing multiple remedies at once. (*McDonald, supra*, 45 Cal.4th at pp. 100, 108-109; *Elkins v. Derby* (1974) 12 Cal.3d 410, 419-420 (*Elkins*).)

Our Supreme Court has held that equitable tolling is available in cases under the Act. In *McDonald*, the Supreme Court held that the deadline for filing an administrative claim under the Act could be tolled while a plaintiff is voluntarily pursuing alternate remedies. (*McDonald*, *supra*, 45 Cal.4th at p. 106.) *McDonald* recognized that equitable tolling is consistent with the Act's mandate that it be liberally construed to safeguard the right to a workplace free of discrimination. (*Id.* at pp. 107-108, citing *Richards*, *supra*, 26 Cal.4th at p. 819.) Under *McDonald*, the time for filing a claim pursuant to the Act may be tolled where the plaintiff can establish "three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.' " (*McDonald*, *supra*, 45 Cal.4th at p. 102, quoting *Addison*, *supra*, 21 Cal.3d at p. 319.)

6

We turn to whether the undisputed facts, viewed in the light most favorable to Brome, sufficed to create a triable issue on each element.

**1.**

To satisfy timely notice, "filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." (*McDonald*, *supra*, 45 Cal.4th at p. 102, fn. 2; see also *Elkins*, *supra*, 12 Cal.3d at pp. 412, 417-418.)

Here, a jury could reasonably conclude that Brome's workers' compensation claim put the Patrol on notice of his potential discrimination claims. Brome filed a workers' compensation claim during the limitations period, asserting a work-related stress injury. To determine whether Brome's stress was work-related, the Patrol would have needed to investigate the circumstances that caused him stress. (See *Elkins*, *supra*, 12 Cal.3d at p. 418 ["After the filing of a compensation claim, the employer can identify and locate persons with knowledge of the events or circumstances causing the injury."].) The same circumstances form the basis for Brome's discrimination claims, as his stress injury was caused by the harassment and hostile work environment he alleges.

Additionally, in responding to his workers' compensation claim, Brome's superior officers were well aware of his discrimination concerns. When the Patrol reached out to Brome regarding his compensation claim, he stated he was in counselling throughout his career due to harassment and a hostile work environment. His captain testified he understood that Brome was asserting not only an injury claim but also a discrimination claim. In response, Brome's captain sent him a letter affirming the Patrol's commitment to a workplace free of discrimination, and he provided information about filing a discrimination complaint.

Our conclusion that Brome's compensation claim could have provided notice of his discrimination claims is reinforced by the workers' compensation scheme. Workers' compensation claims and discrimination claims may involve overlapping circumstances. (See, e.g., Lab. Code, § 3208.3, subd. (e)(4) [permitting recovery for psychiatric injury caused by "sexual or racial harassment"], and subd. (h) [providing that recovery for

7

psychiatric injury is unavailable if the injury was "substantially caused by a lawful, nondiscriminatory, good faith personnel action"].) Accordingly, "claims, . . . based on sexual or racial discrimination or other conduct contrary to fundamental public policy . . . may be the subject of both workers' compensation proceedings and civil actions." (*Claxton v. Waters* (2004) 34 Cal.4th 367, 373 [standard workers' compensation claims release form inapplicable to claims in separate action under the Act]; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1157 [workers' compensation provision prohibiting discrimination based on work-related disability is not the exclusive remedy for such discrimination, as remedies pursuant to the Act remain available].)

In short, we reject the assertion that, as a matter of law, Brome's compensation claim failed to provide notice that the Patrol faced potential discrimination liability.

**2.**

We next consider whether equitable tolling would prejudice the Patrol. We hold that a reasonable jury could find it would not.

The Patrol argues that equitable tolling would be prejudicial because a workers' compensation claim is legally distinct from a claim under the Act. However, the Patrol's position cannot be squared with our Supreme Court's decision in *McDonald.* As *McDonald* explained, the prejudice element is " ' a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.' " (*McDonald*, *supra*, 45 Cal.4th at p. 102, fn. 2, quoting *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 925.) The test for equitable tolling contains no requirement that the legal claims themselves be identical but instead focuses on whether the facts are similar enough that an investigation of one claim will allow collection and preservation of evidence concerning the other. (See *McDonald, supra*, 45 Cal.4th at p. 102 & fn. 2.) Equitable tolling is thus analogous to the doctrine allowing a later amended complaint to "relate back" to the date the original complaint was filed; the latter doctrine assumes that a defendant will not be prejudiced if new claims are added to the complaint, "provided that

recovery is still sought upon the same general set of facts that underlay the original complaint." (*Elkins*, *supra*, 12 Cal.3d at p. 418, fn. omitted.)

Consistent with *McDonald*, *Elkins* held that a workers' compensation claim could support equitable tolling for a personal injury action even though the claims were not co-extensive. (*Elkins*, *supra*, 12 Cal.3d at pp. 412, 417-418.) Because the compensation claim did not require fault, "an employer notified of a compensation claim may fail to gather evidence of fault, and such evidence could prove critical in a subsequent tort action." (*Id.* at p. 418.) But the filing of the compensation claim nonetheless affords the employer an opportunity to "identify and locate persons with knowledge of the events or circumstances causing the injury" and thereby "take[] the critical steps necessary to preserve evidence respecting fault." (*Ibid.*) *Elkins* concluded that prejudice to the employer would be minimal and its interest in prompt notice was satisfied. (*Id.* at pp. 417-418.) (See also, e.g., *Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 752-753 [workers' compensation claim could toll limitations period for premises liability claim, and damages recoverable in the two claims need not be coextensive]; *Myers v. County of Orange* (1970) 6 Cal.App.3d 626, 637 [claim period tolled while plaintiff pursued reinstatement remedy to restore deceased husband's employment status and survivor benefits, even though plaintiff's subsequent claim involved "a different cause of action" for wrongful discharge]; *Tu-Vu Drive-In Corp. v. Davies* (1967) 66 Cal.2d 435, 436-437 [challenge to writ of execution that led to wrongful property seizure could toll limitations period for claims for reputational and business harm caused by property seizure].).

We find unpersuasive the Patrol's reliance on *Aerojet General Corp. v. Superior Court* (1986) 177 Cal.App.3d 950 (*Aerojet*), which held that a workers' compensation claim could not provide tolling for a fraudulent concealment action. (*Id.* at pp. 954-956.) *Aerojet* reasoned that the filing of the compensation claim "did not alert defendants to the nature or the imminence" of the other claim because the "evidence an employer might gather during the pendency of a worker's compensation action . . . will serve him not at all in a suit for fraudulent concealment." (*Id.* at p. 956.)

9

Here, in contrast, an investigation concerning the source of Brome's work-related stress should have preserved evidence concerning his discrimination claims. Indeed, the record reflects that after Brome filed his workers' compensation claim, the Patrol had "lots of conversations back during that time period" about whether the disability Brome asserted was "because of work-related issues or other related issues[.]" Brome's captain was aware of Brome's belief that he was treated differently based on his sexual orientation and understood he had a potential discrimination claim. Although the Patrol asserts that it could not investigate because Brome asked not to be contacted, the record reflects that the Patrol repeatedly communicated with Brome during his medical leave and that he was responsive. A trier of fact could thus reasonably conclude that equitable tolling would not prejudice the Patrol.

**3.**

The third equitable tolling element concerns whether the plaintiff exhibited good faith and reasonable conduct. (*McDonald, supra*, 45 Cal.4th at p. 102.) We conclude Brome has raised a triable issue of fact on this issue. The Patrol complains that Brome did not exhibit good faith because he took 11 months after the resolution of his workers' compensation claim to file his claim under the Act. But after years of harassment and hostility due to anti-gay bias at the Patrol, Brome was so distressed that he became suicidal and was unable to work, and he was denied adequate counselling while struggling to recover. Although 11 months elapsed, we cannot say that Brome is unable to meet the good faith requirement as a matter of law.

We therefore conclude that a reasonable trier of fact may find that Brome has met the elements for equitable tolling, which would toll the Act's limitations period during the 285 days that his workers' compensation claim was pending. (See *Lantzy*, *supra*, 31 Cal.4th at p. 370 [effect of tolling is to stop the running of the limitations period during the tolling event].) If a jury so finds, then Brome's claims would be timely if he can also establish unlawful conduct by the Patrol occurring on or after December 5, 2014.

## C.

Brome contends that he may also rely on conduct occurring prior to December 5, 2014, because the harassment, hostile environment, and discrimination he challenges constituted a continuing violation. We agree that the record does not, as a matter of law, preclude him from establishing a continuing violation.

The continuing violation doctrine "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards*, *supra*, 26 Cal.4th at p. 802.) "Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety." (*Aryeh*, *supra*, 55 Cal.4th at p. 1198.) Applied to discrimination cases, the doctrine reflects a legislative judgment that the statute of limitations "should not be interpreted to impose serious practical difficulties on an employee's ability to vindicate this right through litigation if it can be reasonably interpreted otherwise." (*Richards*, *supra*, 26 Cal.4th at pp. 820-821.) Further, the continuing violation doctrine seeks to promote informal resolution of grievances and avoid premature or unnecessary litigation. (*Ibid.*) It also reflects an understanding that unlawful acts that "in isolation may seem trivial can assume greater significance and constitute a greater injury when viewed as one of a series of such [acts]." (*Id*. at p. 822.)

To establish a continuing violation, an employee must show that "the employer's unlawful actions are (1) sufficiently similar in kind—recognizing, . . . that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms [citation]; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence [citation]." (*Richards*, *supra*, 26 Cal.4th at p. 823.) In cases involving ongoing harassment or failure to accommodate a disability, the unlawful acts will not have gained "permanence" unless the "employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." (*Ibid.*) The courts have applied the

11

continuing violation doctrine more broadly in harassment and accommodation cases, "either concluding the employer's actions had little 'permanence' or else giving little weight to the permanence factor." (*Id.* at p. 817.)

Regarding the first factor, we conclude Brome has presented evidence sufficient for a reasonable jury to find that similar kinds of actionable conduct occurred prior to and during the limitations period. Although the trial court held he failed to present evidence of such conduct within the period, Brome testified that other officers denied him backup assistance during every shift he worked and that he was the only officer denied backup assistance on a "daily basis." His evidence indicated that use of homophobic, derogatory language was "ongoing" and "very common" at the Solano office and that the failure to display his Officer of the Year photograph continued to the end of 2014. In addition, by mid-January 2015, because of his working conditions, Brome's mental state had deteriorated to the point that he felt suicidal. We cannot say that, as a matter of law, the record precludes a jury from finding that Brome continued to experience similar kinds of harassment and discrimination through January 2015. (Cf. *Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 723-724 [triable issue that actionable conduct continued into limitations period where employee testified that coworker "constantly" blocked access to her work station, jammed her equipment several times, and interfered with her work in other ways].)[4]

The same evidence could suffice to establish that the acts of which Brome complained occurred with reasonable frequency. (See, e.g., *Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 1006 [employee raised triable issue on frequency prong where discriminatory acts were "intermittent and discontinuous" in part]). The daily denial of backup assistance, "ongoing" and "very

---

[4] Brome also contends a jury could conclude that during his medical leave, the Patrol unlawfully interfered with his workers' compensation claim, and that the Patrol's communications with him concerning his leave constituted harassment similar to unlawful conduct occurring prior to the limitations period. Because we find no evidence that the Patrol acted unlawfully during his medical leave, we reject this argument.

12

common" use of homophobic language, and continuing refusal to display his award photograph support such a conclusion.

Whether these problems had gained permanence prior to the limitations period is a closer question.  The Patrol contends that the fact that the problems continued for years should have put Brome on notice that the situation could not be remedied without litigation, and it points to evidence that Brome himself felt hopeless at times.  But a jury might find it was reasonable for Brome to seek a fresh start at the Solano office and request assistance from his superiors there once similar problems arose.

Moreover, the Patrol's words and actions could support a conclusion that the situation was not futile.  (See *Richards*, *supra*, 26 Cal.4th at p. 823 [permanence inquiry considers "[i]f the employer has made clear in word and deed that the employee's" efforts at conciliation are "futile."]; *id.* at pp. 823-824 [statute of limitations begins to run when the employer "mak[es] clear to the employee in a definitive manner" that the employee's requests have been rejected].)  At no time did Brome's superiors indicate they had reached an impasse, they were rejecting his concerns, or that he should leave or give up.  Instead, they consistently told him they would look into and address his concerns.  His captain testified that they did look into the situation and at least one officer was disciplined.  Brome also won the Officer of the Year award in late 2013.  And, critically, the day after Brome took medical leave in January 2015, his captain sent him a letter affirming that "we remain committed to provide [*sic*] a safe and healthy work environment that is free of discrimination and harassment for all employees and want to work with you to that end."  The letter stated that they "valued" him as an employee and "genuinely" hoped to work with him to resolve his issues.  While it is possible that a jury could conclude the situation was objectively futile, that is not the only conclusion supported by the record.  (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1059-1060 [a reasonable jury could conclude situation was not futile until employer "finally rebuffed" employee's efforts to discuss her concerns].)

The Patrol's cases are inapposite because each involve a definitive rejection of the employee's concerns.  (See, e.g., *Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th

13

1390, 1403-1404 [employer responded to employee's discrimination complaints by repeatedly reprimanding and disciplining him, transferring him, and rejecting his grievances; employee testified that before the limitations period, he knew further efforts were futile]; *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1042-1043 [finding permanence when employer responded to employee's complaint about loss of duties by offering a transfer, reasoning: "We can conceive of little that would be a more definitive denial of plaintiff's request to perform certain job duties than an offer to transfer her out of the job altogether."]; *Weeks v. Union Pacific Railroad Company* (2015) 137 F.Supp.3d 1204, 1226 [permanence where employer denied 30 transfer or reassignment requests and situation remained unchanged for 4 years].)

We cannot conclude that the continuing violation doctrine is inapplicable as a matter of law.

### D.

Finally, Brome asserts that the trial court erred in concluding he is unable to establish that he was constructively discharged as a matter of law. We agree.

To establish constructive discharge, an employee must show that the employee's working conditions were so intolerable or aggravated that a reasonable employee would be forced to resign and that the employer either created or knowingly permitted those conditions, such that a reasonable employer would realize that a reasonable employee in such circumstances would resign. (*Turner*, *supra*, 7 Cal.4th at pp. 1251, 1246-1250; see also *Ortiz v. Dameron Hospital Association* (2019) 37 Cal.App.5th 568, 578-579.) To be intolerable, working conditions must be "unusually 'aggravated' or amount to a 'continuous pattern.'" (*Turner*, 7 Cal.4th at pp. 1246-1247; see also *id.* ["The conditions giving rise to the resignation must be sufficiently extraordinary and egregious"]). Each individual incident need not be sufficient standing alone to force a resignation; rather, the accumulation of discriminatory treatment over time can amount to intolerable working conditions. (See, e.g., *Thompson v. Tracor Flight Systems., Inc.* (2001) 86 Cal.App.4th 1156, 1171-1072 ["even though individual incidents in a campaign of harassment do not constitute justification for an employee to resign, the overall campaign of harassment can

14

constitute such a justification"]; *Valdez v. City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1056 (*Valdez*) [employee can establish constructive discharge by showing a " 'continuous pattern of discriminatory treatment over a period of years.' "].)

We conclude that Brome has raised a triable issue as to whether his working conditions were so intolerable that a reasonable employee would have resigned. Unlike the other officers at the Solano office, Brome was routinely forced to respond to high-risk enforcement and accident scenes on his own, placing his life in danger. These denials of backup assistance happened daily and were at least in some instances due to his sexual orientation. His captain testified that the denial of backup could put an officer in a "very precarious" situation, reinforcing that a reasonable officer would have found the conditions objectively intolerable. (See *Valdez*, *supra*, 231 Cal.App.3d at p. 1057, fn.2 ["The psychological stress and increased physical danger of going into the field unable to count on fellow officers for assistance could itself represent an intolerable condition."].)

The Patrol contends that the working conditions could not have been intolerable if Brome endured them for years. But Brome transferred to the Solano office because he was hoping to get away from the discrimination and harassment he suffered in his previous post, and once there he sought resolution by repeatedly complaining to his superiors. Because of his working conditions, Brome suffered from anxiety, trauma, and sleep disturbances, and eventually became suicidal. Viewed as a whole, the record could support a conclusion that Brome's working conditions became objectively intolerable over time and would have forced a reasonable employee to resign. (See *Valdez*, *supra*, 231 Cal.App.3d at p. 1058 ["The length of time the plaintiff remained on the job is relevant in determining the severity of the impact of the working conditions but does not as a matter of law prevent the plaintiff from proceeding" on a constructive discharge claim]; see also *Turner*, *supra*, 7 Cal.4th at p. 1254.)

Further, although a jury could find that the Patrol tried to address the problem, there is also evidence to support a finding that the Patrol knowingly permitted the intolerable conditions. Brome's superiors knew of his complaints and understood he believed he faced these conditions due to sexual orientation discrimination. Although

15

they took some action, the denials of backup happened "daily" and "management refused to do anything about it." While it is not the only possible conclusion to draw, there is enough evidence for a reasonable trier of fact to conclude that the Patrol knowingly permitted these conditions and should have known that a reasonable employee in Brome's position would resign.

We recognize the potential tension between Brome's theories: the conditions were so intolerable that a reasonable employee would feel forced to resign (for purposes of establishing constructive discharge), and yet the same employee could reasonably believe the situation was salvageable (for purposes of establishing a continuing violation). But at this stage of the litigation, our task is simply to determine whether facts in the record could support either proposition. It will be the jury's job to reconcile the evidence at trial, and it may well conclude that Brome has proven only one or the other.

## DISPOSITION

The judgment is reversed, and the matter remanded to the trial court with instructions to deny the Patrol's motion for summary judgment as to Brome's Fair Employment and Housing Act claims. Brome is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

_____
BURNS, J.

WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.


A154612

Superior Court of Solano County, Case No. FCS047706, Judge Michael Mattice

Rosen Bien Galvan & Grunfeld LLP, Gay Crosthwait Grunfeld, Lisa A. Ellis and Benjamin Joseph Bien-Kahn, for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Peter D. Halloran, Supervising Deputy Attorney General, and Jennifer G. Stoecklein, Deputy Attorney General, for Defendant and Respondent.

National Center for Lesbian Rights, Amy Elizabeth Whelan and Asaf Orr, for GLBTQ Advocates & Defenders, Lambda Legal Defense and Education Fund, Inc., National Center for Transgender Equality, and San Francisco LGBT Center as Amici Curiae on behalf of Plaintiff and Appellant.