# IN THE SUPREME COURT OF CALIFORNIA

SAINT FRANCIS MEMORIAL HOSPITAL,
Plaintiff and Appellant,

v.

STATE DEPARTMENT OF PUBLIC HEALTH, Defendant and
Respondent.

S249132

First Appellate District, Division One
A150545

San Mateo County Superior Court
CIV537118

---

June 29, 2020

Justice Cuéllar authored the opinion of the Court, in which
Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu,
Kruger, and Groban concurred.

---

SAINT FRANCIS MEMORIAL HOSPITAL v. STATE
DEPARTMENT OF PUBLIC HEALTH

S249132

Opinion of the Court by Cuéllar, J.

California law permits — but also sets certain limits on — judicial review of adjudicatory decisions made by agencies responsible for implementing public policies on health, natural resources, employment, and other issues. One example is Government Code section 11523,[1] which lets parties seek judicial review of an agency's adjudicatory decision by filing a petition for a writ of administrative mandate "within 30 days after the last day on which reconsideration can be ordered." Yet lurking in the backdrop for most limitations periods is equitable tolling: a judicially created doctrine allowing courts to toll the statute of limitations when justice so requires.

What we must resolve in this case is whether equitable tolling can ever lessen the otherwise strict time limit on the availability of writs of administrative mandate under section 11523, and if so, whether the doctrine applies in this case. The answer to the first question is yes. Section 11523 allows for equitable tolling because nothing in the statute's language, structure, or legislative history demonstrates a legislatively enacted expectation to prohibit equitable tolling — which

_____

[1]  All statutory references are to the Government Code unless otherwise noted.

otherwise tends to function as a crucial backdrop to statutes of limitations.

Close scrutiny of that backdrop also reveals that the first two elements of tolling are satisfied in this case: timely notice and lack of prejudice. Equitable tolling nonetheless also depends on a third element — the reasonable and good faith conduct of the party invoking it — and we cannot from this record glean, nor has the Court of Appeal thoroughly addressed, whether Saint Francis satisfies that element. So we vacate the judgment and remand for the Court of Appeal to determine whether the third element of equitable tolling is satisfied.

## I.

When the State Department of Public Health (the Department) learned that doctors at Saint Francis Memorial Hospital left a surgical sponge in a patient during a 2010 surgery, it imposed a $50,000 fine on the hospital. The Department alleged that Saint Francis had "failed to develop and implement a [sponge] count procedure" and lacked a policy to properly train its staff, as required by California Code of Regulations, title 22, section 70223, subdivision (b)(2).

Saint Francis appealed. After a hearing, an administrative law judge (ALJ) issued a proposed decision in Saint Francis's favor. The ALJ reasoned that the regulations were not "intended to impose a penalty for any adverse occurrence during the provision of surgical services" — they only required Saint Francis to "develop[] and implement[] surgical safety [policies]." Because those policies existed at the time of the incident, Saint Francis wasn't liable for violating the regulations.

On administrative review, however, the Department reversed the ALJ's proposed decision and upheld the penalty against Saint Francis.[2]  It reasoned that "the term 'implement' informs licensees that they must not only develop and maintain a policy, [but] must actually use the policy."  Saint Francis had failed to put its sponge-count policy into practice — "[h]ad [it] done so, the sponge count would have revealed that a four-inch by eight-inch surgical sponge was still inside the patient" — so the hospital had violated the regulations.  The Department served Saint Francis with its decision — which was "effective immediately" — on December 16, 2015.[3]

Two weeks later, on December 30, 2015, Saint Francis filed a request for reconsideration under section 11521.  This section typically allows an agency to order reconsideration of its

---

[2]     After an ALJ issues a proposed decision, there is "a second level of decisionmaking in which the [Department] decides whether to adopt the ALJ's proposed decision." (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 5.)  If it chooses not to adopt the proposed decision in its entirety, the Department may: reduce or mitigate the penalty but otherwise adopt the decision (§ 11517, subd. (c)(2)(B)), make technical or minor changes to the decision (§ 11517, subd. (c)(2)(C)), reject the proposed decision and refer the matter back to the ALJ (§ 11517, subd. (c)(2)(D)), or reject the proposed decision "and decide the case upon the record, including the transcript, or upon an agreed statement of the parties, with or without taking additional evidence" (§ 11517, subd. (c)(2)(E)).

[3]     Although the Department issued its final decision on December 15, 2015, the Department conceded in its briefs and at oral argument that the relevant date for the purposes of the statute of limitations is December 16, 2015 — the date the Department served Saint Francis with its final decision.

decision within "30 days after the delivery or mailing of a decision to a respondent." (§ 11521, subd. (a).) According to Saint Francis, the Department had mistakenly placed the burden of proof on the hospital, and by failing to consider evidence introduced by Saint Francis at the administrative hearing. The Department sought to rebut these arguments on the merits in its response, which it filed on January 8, 2016.

On January 14, 2016, Saint Francis's legal counsel wrote to counsel for the Department. Counsel for Saint Francis sought to confirm his understanding that the Department had until "next Tuesday [January 19] to decide the request [for reconsideration]." Saint Francis explained that, if the request for reconsideration was denied, it "intend[ed] to petition for a writ of mandate with the Superior Court." On January 19, 2016 — which, as the parties later learned, was after the deadline by which Saint Francis should have filed its petition for a writ of administrative mandate — counsel for the Department responded: "I believe you are correct." The Department's counsel didn't mention that section 11523's 30-day statute of limitations for filing a petition for a writ of administrative mandate had begun running on the effective date of the Department's decision, December 16, 2015, and expired on January 15, 2016. Instead, counsel for the Department offered to put Saint Francis in touch with the lawyer who would be representing the Department in the superior court proceedings.

The Department also denied Saint Francis's request for reconsideration on January 14, 2016. It explained that because the Department's decision was "effective immediately," Saint Francis couldn't seek reconsideration of the Department's decision. The Department was thus "unable to consider [Saint

Francis's] Request for Reconsideration[,] which is deemed denied."

On January 26, 2016 — just 11 days after the Department denied Saint Francis's request for reconsideration, but 41 days after being served with the Department's final decision — Saint Francis filed a petition for a writ of administrative mandate in superior court. (See § 11521.) The Department demurred on the ground that the petition was untimely under section 11523, which requires that a writ petition "be filed within 30 days after the last day on which reconsideration can be ordered." After allowing Saint Francis to amend its petition, the court sustained the Department's demurrer. It reasoned that Saint Francis's petition was time-barred, and "that Saint Francis's 'mistake [] as to [the] law . . . [was] not a sufficient basis to excuse [a] late filing.' " (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2018) 24 Cal.App.5th 617, 621 (*Saint Francis*).)

The Court of Appeal affirmed. In so doing, it acknowledged that "Saint Francis's mistake about the availability of reconsideration was made in good faith" and "that Saint Francis notified the Department of its intent to file a writ petition." (*Saint Francis*, *supra*, 24 Cal.App.5th at p. 624.) The court nonetheless held that because "Saint Francis's request for reconsideration did not constitute the timely pursuit of an available remedy[,] . . . [¶] . . . these circumstances are insufficient to toll the running of [section 11523's] 30-day [limitations] period." (*Ibid.*) We granted review to decide whether equitable tolling may apply to petitions filed under section 11523 and, if so, whether the Court of Appeal erred in concluding that tolling did not apply to this case.

## II.

We first consider whether equitable tolling may apply to section 11523. The Department argues it cannot because equitable tolling is inconsistent with the statute's "text, structure, and legislative history."

Equitable tolling is a "judicially created, nonstatutory doctrine" that " 'suspend[s] or extend[s] a statute of limitations as necessary to ensure fundamental practicality and fairness.' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 (*McDonald*).) The doctrine applies "occasionally and in special situations" to "soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." (*Addison v. State* (1978) 21 Cal.3d 313, 316 (*Addison*).) Courts draw authority to toll a filing deadline from their inherent equitable powers — not from what the Legislature has declared in any particular statute. (See *Elkins v. Derby* (1974) 12 Cal.3d 410, 420, fn. 9 (*Elkins*).) For that reason, we presume that statutory deadlines are subject to equitable tolling. (See *Irwin v. Department of Veterans Affairs* (1990) 498 U.S. 89, 95–96 (*Irwin*).)

But that presumption can be overcome. Equitable tolling, we've also observed, "is not immune" from the operation of statutes. (*McDonald, supra*, 45 Cal.4th at p. 105.) A court may conclude that explicit statutory language or a manifest policy underlying a statute simply cannot be reconciled with permitting equitable tolling, "even in the absence of an explicit prohibition." (*Ibid.*) We adopted that conclusion in *Lantzy v. Centex Homes*, where we held that the Legislature had sought to preclude Code of Civil Procedure section 337.15's statute of

6

limitations from being tolled. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363 (*Lantzy*).)

Contrary to the Department's assertions, we find no indication that the Legislature's purpose encompassed prohibiting section 11523's statute of limitations from being tolled. Our analysis begins with the statute's language and structure. A petition for a writ of mandate "shall be filed within 30 days after the last day on which reconsideration can be ordered." (§ 11523.) Although the statute — like all statutes of limitations — sets forth a deadline by which writ petitions must be filed, its language and structure is no different from that of other statutes of limitations that are subject to equitable tolling. (See, e.g., *McDonald, supra,* 45 Cal.4th at p. 106 [tolling available under statute stating: " 'No [] complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred' "]; *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1502, fn. 6 [tolling available under statute that required parties " 'to seek judicial review from an appeals board decision . . . not later than six months after the date of the decision of the appeals board' "].) So the fact that section 11523 sets a deadline for filing a petition for a writ of administrative mandate does not, by itself, demonstrate that the Legislature sought to prohibit tolling.

Nor does the length of section 11523's statute of limitations demonstrate a legislative purpose to forbid the availability of equitable tolling. A 10-year statute of limitations, we've reasoned, is "so 'exceptionally long' " that it "indicates the Legislature's effort to provide, within the strict statutory period itself, a reasonable time to" file suit. (*Lantzy, supra,* 31 Cal.4th

at p. 379.) But section 11523's 30-day limitations period is relatively brief, so it carries with it no such inference.

The Department nonetheless identifies two features of the statute purportedly revealing that the Legislature sought to preclude tolling. The Department first contends that section 11523's 30-day deadline is significant because "[o]rdinary mandamus writs do not have a specific filing deadline." So the Legislature's adoption of a statute of limitations, it argues, was a departure from the usual state of affairs that we should interpret as indicative of a legislatively enacted expectation that tolling be prohibited. The Department also relies on the fact that section 11523 already tolls the statute of limitations in one situation: when a petitioner requests the administrative record within 10 days of the deadline for requesting reconsideration. (§ 11523.) That the Legislature explicitly included this one situation under which tolling is permitted demonstrates, the Department contends, why section 11523 prohibits tolling under any other circumstance. (See *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 261 [describing the legal maxim *inclusio unius est exclusio alterius* (the inclusion of one is the exclusion of another)].)

When we interpret a legislative provision and make sense of its purpose in the larger statutory scheme, however, our task " 'is to discern the sense of the statute, and therefore its words, in the legal and broader culture. ' " (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114, italics omitted.) Even the Department acknowledges that equitable tolling "is part of the established backdrop of American law" — a backdrop we presume the Legislature understands when drafting limitations periods. (*Lozano v. Montoya Alvarez* (2014) 572 U.S. 1, 11.)

That background principle isn't made explicit in statutes of limitations — whose purpose, after all, are to set firm deadlines by which parties must file suit. (See *Chase Securities Corp. v. Donaldson* (1945) 325 U.S. 304, 314 [statutes of limitations "do[] not discriminate between the just and the unjust claim, or the voidable and unavoidable delay"].) So the Legislature's adoption of the statute of limitations in section 11523 may very well have reflected a goal that petitions for a writ of administrative mandate be filed within 30 days — but it does not, by itself, give rise to the inference that the Legislature sought to foreclose equitable tolling. Our courts have emphasized how equitable tolling can advance "important [public] policy considerations," effectively offering the kind of narrowly drawn flexibility for unusual situations that allows the Legislature to preserve strict default rules. (*Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 926; accord *McDonald*, *supra*, 45 Cal.4th at p. 100.) A requirement that parties seek judicial review within 30 days under section 11523 doesn't prohibit courts' exercise of their equitable powers to toll that limitations period when justice so requires.

Nor is the judiciary powerless to toll the statute of limitations in situations besides the one mentioned in section 11523. A plaintiff's timely request for the administrative record extends the statute of limitations by "30 days after its delivery to him or her." (§ 11523.) Such an exception is sensible: It would be unreasonable, after all, to require plaintiffs to file writ petitions before they receive the record on which their petitions will be based. But section 11523 does not "contain exclusivity language [] that courts have interpreted as confining tolling to specific listed bases." (*McDonald*, *supra*, 45 Cal.4th at p. 107

[citing " ' "in no event" shall the prescriptive period be tolled except under those circumstances specified in the statute' " and no tolling " 'for any reason except as provided' therein" as examples of such language].)  The single exception to section 11523's 30-day limitations period bears little relation to the purpose of equitable tolling:  to excuse noncompliance with the statute of limitations in exceptional circumstances in which a party didn't act within the limitations period because of an obstacle not acknowledged in the statute.  We decline to infer from that single exception that it was within the ambit of the Legislature's purpose to bar tolling in any other circumstance. (See *Young v. United States* (2002) 535 U.S. 43, 49 [The Legislature is presumed to draft limitations periods in light of the "hornbook law that limitations periods are 'customarily subject to "equitable tolling" ' "].)

Similarly unavailing to the Department's position is the legislative history of section 11523.  In contrast to what we discerned from the legislative history of Code of Civil Procedure section 337.15, it does not "reflect[] a clear intent" that equitable tolling ought not be available under section 11523.  (*McDonald*, *supra*, 45 Cal.4th at p. 105.)  Code of Civil Procedure section 337.15, as we explained in *Lantzy*, was enacted in "response to [a] considerable expansion of California's common law of construction liability." (*Lantzy*, *supra*, 31 Cal.4th at p. 374.)  In the decades preceding the statute's enactment, "members of the building industry [] faced exposure to liability for all defects in their past projects so long as these defects remained undiscovered and undiscoverable by reasonable inspection." (*Id.* at p. 375.)  The absence of a strict limitations period "produc[ed] a risk for which insurance was available only at prohibitive cost

. . . thus threatening the industry's economic health." (*Id.* at p. 376.)

It was against this backdrop that the Legislature enacted the 10-year limitations period in Code of Civil Procedure section 337.15. The Legislature appears to have "carefully considered how to provide a fair time to discover construction defects, and to sue upon such defects if necessary, while still protecting a vital industry from the damaging consequences of indefinite liability exposure." (*Lantzy, supra*, 31 Cal.4th at p. 377.) It ultimately "specified in section 337.15 that whatever limitations periods might otherwise apply, 'no action' for injury to property arising from latent construction defects 'may be brought' more than 10 years after substantial completion of the project." (*Ibid.*, italics omitted.) The statute's 10-year limitations period, therefore, was intended "to be firm and final." (*Ibid.*)

Nothing in the legislative history of section 11523 supports a similar conclusion. Indeed, the limited history that exists could reasonably be read to support the availability of equitable tolling. The Legislature amended section 11523 in 1971 to allow plaintiffs who requested the administrative record 30 days, instead of five days, to file a petition for a writ of administrative mandate after receiving the record. (Stats. 1971, ch. 984, § 1, p. 1896.) The analysis prepared by the Department of General Services advised the Governor that although the amendment "may on occasion cause subsequent judicial review proceedings to commence somewhat later than would be the case under existing law[,] . . . such delays would not be likely to measurably affect departmental interests, either favorably or adversely." (Dept. of Gen. Services, Enrolled Bill Rep. on Assem. Bill No. 2067 (1971-1972 Reg. Sess.) Sept. 29, 1971, p. 1.) If the

executive branch wasn't persuaded that extending the deadline from five to 30 days would tend to make a difference in these cases, it seems harder still to conclude that it was within the ambit of the Legislature's purpose for the 30-day deadline to function as an austere, unforgiving limitation period, notwithstanding any equitable considerations buttressing the case for tolling.

The Department doesn't point us to contrary evidence. Its argument rests instead on the fact that the Legislature "has not extended the 30-day deadline to file a writ petition" or "added any additional statutory tolling provisions" since the statute's enactment in 1945. From this inaction, the Department would have us infer that the 30-day deadline is an inflexible one, immune from extension on equitable grounds. Yet because legislatures acquiesce for scores of reasons, such acquiescence supports only limited inferences when we interpret statutes. (See *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156.) The lack of amendments may instead " ' "indicate many [other] things[:] . . . the sheer pressure of other and more important business, political considerations, or a tendency to trust to the courts to correct their own errors . . . ." ' " (*People v. Whitmer* (2014) 59 Cal.4th 733, 741.) So we decline to attribute to the Legislature a purpose for which little or no evidence exists.

We cull little if any evidence from section 11523's text, context, and legislative history that the Legislature took a scalpel to equitable tolling under section 11523. Because we presume that statutes of limitations are ordinarily subject to equitable tolling, the paucity of evidence that the Legislature

ruled it out compels the conclusion that the 30-day statute of limitations may be tolled.

But "may" here means possibility, and not just permission: That equitable tolling is available under section 11523 doesn't mean it will apply in every — or even most — cases. As we've explained, equitable tolling is a narrow remedy that applies to toll statutes of limitations only "occasionally and in special situations." (*Addison*, *supra*, 21 Cal.3d at p. 316; see also *Lantzy*, *supra*, 31 Cal.4th at p. 370 [equitable tolling should be applied only "in carefully considered situations"].) So the conclusion that the Legislature hasn't prohibited a statute of limitations from being tolled ought not transform equitable tolling into "a cure-all for an entirely common state of affairs." (*Wallace v. Kato* (2007) 549 U.S. 384, 396 (*Wallace*).) Courts must instead carefully examine the facts of each case to determine whether "justice and fairness" demand that the limitations period be tolled. (*Lambert v. Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1081.)

## III.

Having concluded that equitable tolling can apply under section 11523, we consider whether it does apply in this case. We begin by outlining the elements of the doctrine, along with the history from which they emerged.

Our equitable tolling doctrine evolved from three lines of California cases, each relieving plaintiffs of the duty to abide by the statute of limitations. (See *Addison*, *supra*, 21 Cal.3d at p. 317.) Courts found a basis to offer some flexibility from the statute of limitations when a plaintiff was already involved in one lawsuit, and filed a subsequent case that could lessen the

damage or harm that would otherwise have to be remedied through a separate case. (*Id.* at pp. 317–318.) So too did courts toll statutes of limitations in situations where a plaintiff was required to pursue, and did indeed pursue, an administrative remedy before filing a civil action. (*Id.* at p. 318.) In a third line of cases, courts tolled the statute of limitations " 'to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits.' " (*Id.* at p. 319.)

It was from all three of these strands of caselaw that equitable tolling emerged. The doctrine allows our courts, "in carefully considered situations," (*Lantzy*, *supra*, 31 Cal.4th at p. 370) to exercise their inherent equitable powers to "soften the harsh impact of technical rules" (*Addison*, *supra*, 21 Cal.3d at p. 316) by tolling statutes of limitations. As we explained in *Addison*, equitable tolling today applies when three "elements" are present: "[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff." (*Addison*, *supra*, 21 Cal.3d at p. 319.) These requirements are designed to "balanc[e] the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [operative] limitations statute." (*Id.* at p. 321.)

## A.

Perhaps in an effort to somewhat tame the potentially capacious extent of the doctrine's flexibility, some lower courts have interpreted equitable tolling to contain a rigid requirement: pursuit of an alternative available administrative or legal remedy. Leaning on our decision in *McDonald*, the Court of Appeal explained that "equitable tolling applies ' "

'[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' " ' " (*Saint Francis*, *supra*, 24 Cal.App.5th at p. 623; see also *Hansen v. Board of Registered Nursing* (2012) 208 Cal.App.4th 664, 672 [equitable tolling available when "a party with multiple *available* remedies pursues one in a timely manner"].) Because "Saint Francis's request for reconsideration did not constitute the timely pursuit of an available remedy since reconsideration was unavailable," the court concluded that section 11523's statute of limitations shouldn't be tolled. (*Saint Francis*, *supra*, 24 Cal.App.5th at p. 624.)

But as the Department itself acknowledges, our past cases stop short of categorically conditioning tolling on a plaintiff's pursuit of a viable remedy. (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 658 (*J.M.*).) The doctrine is sufficiently supple "to 'ensure fundamental practicality and fairness.' " (*Ibid.*) And even in cases where a party seeking tolling pursued an alternative remedy, we've concluded that pursuit of a remedy "embarked upon in good faith, [yet] found to be defective for some reason," doesn't foreclose a statute of limitations from being tolled. (*McDonald*, *supra*, 45 Cal.4th at p. 100.) We applied equitable tolling in *Addison*, for example, to extend the statute of limitations where the plaintiffs first sought relief in federal court, which dismissed their suit for lack of jurisdiction, before filing their action in state court after the statute of limitations had expired. (*Addison*, *supra*, 21 Cal.3d at p. 319.) Although the plaintiffs' first action was futile because of the federal court's lack of jurisdiction, we reasoned that it "notified [defendants] of the action" and gave them "the

opportunity to begin gathering their evidence and preparing their defense." (*Ibid.*)

The Court of Appeal correctly described one scenario under which equitable tolling may apply:  if a plaintiff pursues one of several available legal remedies, causing it to miss the statute of limitations for other remedies it later wishes to pursue.  Yet such facts are far from the only circumstances under which the doctrine may apply.  To determine whether equitable tolling may extend a statute of limitations, courts must analyze whether a plaintiff has established the doctrine's three elements:  timely notice to the defendant, lack of prejudice to the defendant, and reasonable and good faith conduct by the plaintiff. (*Addison, supra*, 21 Cal.3d at p. 319.)

The Department asserts that Saint Francis cannot avail itself of equitable tolling because of the reason for its delayed filing:  its mistake in calculating the deadline.  Relying on Court of Appeal decisions such as *Kupka v. Board of Administration* (1981) 122 Cal.App.3d 791, 794, the Department contends the fact that Saint Francis "simply made a mistake in ascertaining its filing deadline" prevents us from tolling the statute of limitations.  *Kupka* nonetheless differs in meaningful respects from the case before us, and the Department's argument oversimplifies the lesson *Kupka* offers.  That case did not involve an equitable tolling claim.  What the Court of Appeal held in *Kupka* was that a party's mistake, neglect, or personal hardship could not, without more, excuse a late-filed petition under Code of Civil Procedure section 473. (*Kupka, supra*, 122 Cal.App.3d at pp. 794–795.)

We agree that mistake or neglect alone doesn't excuse a late-filed petition.  (See *Irwin, supra*, 498 U.S. at p. 96.)  But neither is that fact, when relevant, dispositive of a party's equitable tolling claim; we must consider it as part of the analysis of whether a plaintiff has established equitable tolling's elements.  (See *Addison, supra*, 21 Cal.3d at p. 319.)  This allows courts to balance "the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [operative] limitations statute." (*Id.* at p. 321.)  So Saint Francis's mistake in calculating the filing deadline under section 11523 isn't necessarily fatal to its equitable tolling claim.  We must instead determine whether the hospital satisfies the three elements of equitable tolling.

**B.**

We begin with timely notice.  The Department contends that Saint Francis fails to satisfy the first element because its request for reconsideration was "unauthorized" under the statutory scheme.  In the Department's view, a plaintiff's pursuit of an alternative remedy that turns out to be flawed cannot provide notice of the party's claims to the defendant.

But that assertion rests on an overly rigid conception of equitable tolling's first prong.  We have never concluded that pursuit of an alternative remedy is necessary for a plaintiff to provide timely notice of its claims to the defendant.  When considering whether a plaintiff provided timely notice, courts focus on whether the party's actions caused the defendant to be "fully notified within the [statute of limitations] of plaintiffs'

claims and their intent to litigate." (*Addison*, *supra*, 21 Cal.3d at p. 321.)

Saint Francis's actions did just that. On December 30, 2015 — well before section 11523's statute of limitations was set to expire — Saint Francis filed a request for reconsideration. Although this request was later "found to be defective for some reason" (*McDonald*, *supra*, 45 Cal.4th at p. 100) — because the Department's "effective immediately" decision rendered reconsideration unavailable to Saint Francis — it provided the Department with timely notice that Saint Francis was seeking to appeal the Department's penalty against the hospital.

That Saint Francis provided the Department with timely notice is underscored by what happened next. On January 14, 2016, one day before section 11523's statute of limitations was set to expire, Saint Francis notified the Department's counsel of its intent to file a petition for a writ of administrative mandate if the request for reconsideration was unsuccessful. The Department's counsel — apparently unaware that Saint Francis's petition was already four days overdue — acknowledged the forthcoming petition on January 19, 2016. The most plausible interpretation of these facts is that Saint Francis's request for reconsideration, together with its communications with the Department's counsel, notified the Department of its intent to seek review of the Department's penalty against the hospital. Because equitable tolling is designed to apply when a plaintiff has " 'satisfied the notification purpose of a limitations statute' " (*McDonald*, *supra*, 45 Cal.4th at p. 102), ignoring this inference would undermine the doctrine's underlying rationale and purpose.

The first element of equitable tolling — that a plaintiff must provide timely notice of its claims to the defendant — has remained the same since the doctrine's inception. (*Addison*, *supra*, 45 Cal.4th at p. 319.) That element ought to be interpreted literally: When confronted with equitable tolling claims, courts must examine each case on its facts to determine whether the defendant received timely notice of the plaintiff's intent to file suit. Because Saint Francis's request for reconsideration, together with the e-mail notifying the Department's counsel of its intent to file a petition for a writ of administrative mandate, provided the Department with timely notice of the hospital's claim, we conclude that Saint Francis has satisfied the first element of equitable tolling.

## C.

The Department next argues that Saint Francis's equitable tolling claim fails because the hospital cannot satisfy the second element: lack of prejudice to the defendant. (See *McDonald*, *supra*, 45 Cal.4th at p. 102.) We disagree.

The Department has suffered prejudice, it contends, because Saint Francis's late filing circumvented its "rel[iance] on legislative rules establishing the finality of its adjudicative decisions in order to execute its statutory charge of safeguarding the public health." That argument ignores the core focus of our prejudice analysis: whether application of equitable tolling would prevent the defendant from defending a claim on the merits. (See *Addison*, *supra*, 21 Cal.3d at p. 318.) Given that the Department defended its assessment of the fine against Saint Francis throughout the administrative proceedings, we don't see how tolling section 11523's statute of limitations would

undermine the Department's ability to defend the propriety of that same penalty in superior court.

Consider the implications of embracing the Department's argument regarding prejudice: We'd be all but compelled to find prejudice in just about every equitable tolling case. Virtually all parties, after all, tend to rely on statutes of limitations in the course of litigation. And the Department presents no explanation of why it, in particular, suffers greater prejudice because of its public charge. The Department's contention also fails to recognize that the finality of adjudicative decisions is already undermined by section 11523, which expressly allows those decisions to be appealed — appeals which can, and typically do, postpone the finality of the Department's decisions for years. For these reasons, we conclude that tolling the statute of limitations wouldn't prejudice the Department.

## D.

The third element of equitable tolling requires reasonable and good faith conduct by the plaintiff. The Department contends Saint Francis cannot satisfy this element because its late filing was due solely to its mistake in calculating the statute of limitations under section 11523.

Our equitable tolling cases have offered little insight on what constitutes reasonable and good faith conduct. Without discussing the third element specifically, we suggested in *Addison* that the plaintiffs' actions were reasonable and carried out in good faith because they "promptly asserted [their cause of action] in the proper state court" after the federal court dismissed it for lack of jurisdiction. (*Addison, supra*, 21 Cal.3d at p. 319.) More recently, we concluded that a party didn't act

reasonably, and thus was not entitled to equitable tolling, when he "pursue[d] a court action when the claims filing requirements [had] not been satisfied." (*J.M.*, *supra*, 2 Cal.5th at p. 657.)

As these examples illustrate, our caselaw has sometimes suggested that "reasonable" and "good faith" have much the same meaning in the context of equitable tolling, but other times construed the terms as creating separate and distinct requirements. We are not the first to grapple with what each of these terms require. (See, e.g., *Kansas City Power & Light Co. v. Ford Motor Credit Co.* (8th Cir. 1993) 995 F.2d 1422, 1430 [good faith is an "amorphous concept, capable of many forms yet requiring none"]; Prosser & Keeton, Torts (5th ed. 1984) § 32, p. 175 ["The conduct of the reasonable person will vary with the situation with which he is confronted"].) Yet what makes the most sense in light of our precedent, equitable tolling's underlying purpose, and its narrow scope in our system, is to construe the third element to encompass two distinct requirements: A plaintiff's conduct must be objectively reasonable and subjectively in good faith.

When it comes to reasonableness, the "ultimate test" is "objective." (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1083.) An analysis of reasonableness focuses not on a party's intentions or the motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances. We use this objective analysis to assess ineffective assistance of counsel claims under the Sixth Amendment (see *People v. Mai* (2013) 57 Cal.4th 986, 1009 ["defendant must demonstrate . . . counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms"]), for

example, and in the context of insurance law to determine which party must pay an insured's site investigation costs (see *Aerojet–General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 62 ["Whether the insured's site investigation expenses are defense costs that the insurer must incur in fulfilling its duty to defend must be determined objectively"]). A party seeking equitable tolling must satisfy a similar standard: It must demonstrate that its late filing was objectively reasonable under the circumstances.

Good faith pivots instead on a party's intentions. It is a test "ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, [] being faithful to one's duty or obligation." (*People v. Nunn* (1956) 46 Cal.2d 460, 468.) To determine whether a defendant is entitled to attorney fees, for example, courts employ a subjective analysis and ask whether the plaintiff brought an action in good faith. (Code Civ. Proc., § 1038, subd. (a).) The third element of equitable tolling likewise requires courts to determine whether a party's late filing was subjectively in good faith — whether it was the result of an honest mistake or was instead motivated by a dishonest purpose.

Construing equitable tolling's third element to contain an objective and subjective requirement fits the doctrine's underlying rationales. Equitable tolling applies only "in carefully considered situations to prevent the unjust technical forfeiture of causes of action." (*Lantzy, supra,* 31 Cal.4th at p. 370.) It does not, as courts have explained, "extend to . . . garden variety claim[s] of excusable neglect." (*Irwin, supra,* 498 U.S. at p. 96.) Yet if we were to apply equitable tolling to situations

when a party demonstrates only reasonable conduct or good faith — but not both — we would risk shaping the doctrine into one that becomes a norm instead of an exception. Limiting the doctrine's applicability to only those cases in which a party demonstrates objective reasonableness and subjective good faith precludes the doctrine from being "a cure-all for an entirely common state of affairs," while ensuring that it provides a narrow form of relief in "unusual circumstances" when justice so requires. (*Wallace*, *supra*, 549 U.S. at p. 396.)

The Court of Appeal didn't address whether Saint Francis's actions were reasonable and in good faith. At oral argument, the parties argued for the first time that certain facts bore on the question of whether Saint Francis satisfies the third element. But the record before us leaves some opacity about whether Saint Francis's conduct was reasonable and in good faith. As we've often done in such situations, we remand the case for the Court of Appeal to determine whether Saint Francis satisfies the third element, and thus is entitled to equitable tolling. (See *Montrose Chemical Corp. of California v. Superior Court* (2020) 9 Cal.5th 215, 238; *San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2019) 8 Cal.5th 733, 746–747 [contentions raised for the first time at oral argument "should be answered first by the Court of Appeal"].)

## IV.

Statutes of limitations serve important purposes: They motivate plaintiffs to act diligently and protect defendants from having to defend against stale claims. But equitable tolling plays a vital role in our judicial system, too: It allows courts to

exercise their inherent equitable powers to excuse parties' failure to comply with technical deadlines when justice so requires. To appropriately balance these two competing ends, we recognize the Legislature's ability to forbid equitable tolling in certain statutes, and we require plaintiffs to establish timely notice, lack of prejudice to the defendant, and reasonable and good faith conduct by the plaintiffs before they are entitled equitable tolling. For the doctrine to fulfill its purpose, however, we continue to presume that tolling is available in the absence of evidence to the contrary, and allow courts to determine on a case-by-case basis whether tolling is warranted under the facts presented, with careful consideration of the policies underlying the doctrine. (See generally *Elkins*, *supra*, 12 Cal.3d at pp. 417–420.)

As to whether equitable tolling may apply when agency adjudicatory decisions are at issue, the text and context of section 11523 persuade us: The Legislature did not prohibit the statute's 30-day limitations period from being tolled. And the facts of this case demonstrate that Saint Francis satisfied the doctrine's first and second elements. Although the hospital's belated filing arose from a mistake about the filing deadline under section 11523 — a mistake that appears to have been shared by the Department — it provided timely notice to the Department of its intent to file a petition for a writ of administrative mandate. And nothing in the record demonstrates that the Department was prejudiced by Saint Francis's late filing. Because the Court of Appeal didn't address equitable tolling's third element, we vacate the judgment and

remand the case to the Court of Appeal for further proceedings
consistent with this opinion.


**CUÉLLAR, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Saint Francis Memorial Hospital v. State Department of Public Health
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XX 24 Cal.App.5th 617
**Rehearing Granted**

_____

**Opinion No.** S249132
**Date Filed:** June 29, 2020
_____

**Court:** Superior
**County:** San Mateo
**Judge:** George A. Miram

_____

**Counsel:**

Sheuerman, Martini, Tabari, Zenere & Garvin and Cyrus A. Tabari for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Edward C. DuMont, State Solicitor General, Janill L. Richards, Principal Deputy State Solicitor General, Gonzalo C. Martinez, Deputy State Solicitor General, Julie Weng-Gutierrez, Assistant Attorney General, Samuel T. Harbourt, Susan M. Carson, Gregory D. Brown and Nimrod P. Elias, Deputy Attorneys General, for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Cyrus Tabari
Scheuerman, Martini, Tabari, Zenere & Garvin
1033 Willow Street
San Jose, CA 95125
(408) 288-9700

Samuel T. Harbourt
Deputy Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
(415) 510-3919